Bartley, C. J.
This case presents the single question, whether the statute of limitations commences to run against a feme sole, at the age of eighteen years, when the disability of infancy is removed, or not till three years thereafter, when she reaches the age of twenty-one years.
The first section of the statute of limitations, fixes the limitation upon actions of trespass upon property, real or personal, etc., at four years. The second section is in the following words, to wit:
“ That if any person, entitled to have or maintain any action of ejectment, for the recovery of the title or possession of any lands, tenements, or hereditaments, be at the time his right or title first descended or accrued, within the age of twenty-one years, feme covert, insane, or imprisoned, every such person may, after the expiration of twenty-one years, from the time his right or title *first descended or accrued, bring such action within ten [82 years after such disability shall be removed, and at no'time thereafter. And if any person, entitled to any other action, limited by this act, shall, at the time such cause of action accrued, be within the age of twenty-one years, feme covert, insane, or imprisoned, *83 every such person shall he at liberty to bring such action within the respective times limited by this act, after such disability shall be removed.”
When this statute was enacted, February 18, 1831, the age of majority for females, as well as males, in this state, was twenty-one years. On the 17th day of February, 1834, a law was passed, fixing the age of majority for females, at eighteen years and upward.
The case presents simply a question of statutory interpretation touching the true intent and meaning of the, provision, that “ if any person entitled to any other action, limited by this act, shall, at the time such cause of action accrued, be within the age of twenty - one years, feme covert, insane, or imprisoned, every such person shall be at liberty to bring such action within the respective times limited by this act, after such disability shall be removed.” Are the words “ within the age of twenty-one- years,” as here .employed, and by the connection in which they stand, to be understood as being simply expressive of the period of the removal of the disability of infancy, or, are they to be interpreted as meaning an arbitrary period in the age of the person, uncontrolled by the fact of such disability?
In the interpretation of statutes, words clearly expressive of the sense and manifest intention of the law are to be taken literally. But it is a, fundamental rule of construction, that the language of a statute is to be interpreted according to the sense in which the terms are employed and the plain intention of the legislature. The great object of the rules and maxims of interpretation has been to discover the true intention of the law. We are taught by the maxim, qui haeret in litera haeret in cortice, that he who considers the mere letter of an instrument, goes but skin-deep into its meaning. Eegard must be had to the real object of the law, and the 83] effect and substance of the subject-matter, and *not barely to the nicety of form or circumstance. The reason, intent, and spirit of a law, therefore, must often prevail over the literal import of the terms employed. The circumstances and relations of things change, so that after the lapse of time, we must sometimes give up either the letter of a law or its true intent. It is not necessary to refer to precedent to sustain the position that where the literal construction of a statute would lead to gross absurdity, or where, out of several acts touching the same subject-matter, there arise *84 collaterally any absurd consequences, manifestly contradictory to common reason, the obvious intention of the law must prevail over a literal interpretation, and it is even said, that provisions leading to collateral consequences of great absurdity or injustice, may be rejected as absolutely void.
The context of the language of the statute in question in this case, and the connection in which it is employed, show very clearly that it was intended to be expressive simply of the j>eriod when the disability of infancy ceased, and nothing else. The disabilities of coverture, of insanity, and of duress, are placed in connection with tho words, “ within tioenty-one years of age; " and the words in the last clause of the section, “after such disability shall be removed,” have an unquestionable and immediate reference to the age mentioned, as well as the other grounds of disability. The statute does not say that the limitation of actions shall begin to run from the time the person to whom the right accrues shall arrive at the age of twenty-one years, but from the time “ such disability shall be removed ” The age mentioned in this saving clause is, by the express language of tho statute, therefore, termed a disability; and to conclude that the expression; “ within the age of twenty-one years,” here employed, meant not the period of the expiration of infancy, but a mere arbitrary period in the age of a person, would present not only a glaring solecism in language, but the use of words at variance with the obvious reason of the law and the manifest object and intention of the law-maker. The *subject-matter of this statutory [84 provision is a restriction of the limitation of actions during the existence of a personal disability; the object is to favor those who are laboring under such disability; the reason is, that those.who are under the age of majority, or under any of the other disabilities mentioned, are not capable of prosecuting actions at law for the recovery of their rights; and the manifest intention is to fix the period at which the limitation should commence to run at such time as the legal disability shall cease. Now, when this statute of limitations was enacted, the age of twenty-one years was the period of the removal of the disability of infancy, as to females as well as males; but when the act of February 17,1834, was passed, fixing the age of eighteen years as the period for the removal of the disability of infancy as to females, although it in nowise repealed or amended the statute of limitations, yet, as to females, it produced a change in the circumstances and relations of the subject-matter of *85 ibis particular provision of the law, which altered not the law, but its application. When the age of twenty-one years ceased to be the period for the removal of the disability of infancy as to females, a change was produced in the subject of this provision in the statute „ of limitations, so that the object of the law, its reason, and intention, being manifestly to provide for the commencement of the running of the statute of limitations at the time when the disability of infancy ceased, it became applicable to females at the age of eighteen years, instead of the age of twenty-one. It is true the phraseology of the statute is, that if any person shall, “at the time the cause of action accrued, be within the age of twenty-one years,” etc.; but it is manifest that the meaning expressed by the language here employed, is within the age of minority, that being, in fact, the literal effect of the provision under the circumstances existing at the time the statute was enacted. Although the statute contains the expression, “within the age of twenty-one years,” yet it does not say that the statute of limitations shall begin to run from the expiration 85] of the twenty-one *years of age, but that the action may be brought within the time limited, after such disability shall be removed. The expression, “within the age of twenty-one years,” therefore, is equivalent to the words, “ within the age of minority,” and was intended to convey no other or different meaning; and the period fixed by the statute at which the limitation began to run, was not an arbitrary period in the age of the person, but the time of the removal of the disability of infancy.
The construction here given to the statute in question is not latitudinarian, but fully justified by the enlightened rules of interpretation in common use. It is certainly no greater departure from the words of the statute than that well-settled interpretation of the words “ beyond seas,” in another saving clause of the statute of limitations, whereby they have been determined to be equivalent to the words out of the limits of the state.
Mr. Justice Burnet said, in the case of Burgett v. Burgett, 1 Ohio, 221: “ It frequently becomes the duty of courts, in order to give effect to the manifest intention of a statute, to restrain, or qualify, or enlarge the ordinary meaning of the words that are used. It is said that the power of construing a statute is in the judges who have authority over all laws, and more especially over statutes, to mold them, according to reason and conscience, to the best and truest use.”
*86 “The intention of the law-makers maybe collected from the cause or necessity of the act; the statutes are sometimes construed contrary to the literal meaning of the words. It has been decided that a thing within the letter was not within the statute unless within its intention. The letter is sometimes restrained, sometimes enlarged, and sometimes the construction is contrary to the letter.” 4 Bac., title Statute, 1 S. 38, 45, 50. Again, he says on page 222: “ Every statute should be construed with a reference to its object, and the will of the law-makers is best promoted by such a construction as secures that object, and excludes every other.”
*In the case in which this doctrine was laid down it was de- [88 cided, by the Supreme Court of this state, that a voluntary conveyance, made without consideration and for the purpose of defrauding creditors, is not void except as against creditors or subsequent purchasers, although a literal construction of the statute would render a covenous deed “ utterly void and of no effect,” not only as to the persons intended to be defrauded, but also strangers,, and even to the grantor himself.
A statute of 1 Edward II. of England, enacted that if any prisoner should break out of prison he should be deemed guilty of felony. A prison having taken fire, a prisoner broke jail, and it was held “ that he was not to be hanged because he would not stay to be burned.” Plowd. 13.
An instance is stated by Puffendorf, on the authority of Herrennius, where the reason of the law was adjudged to control, instead of the language, on the ground that where the reason ceases the law itself shall also cease with it. There was a law that those who, in a storm, forsake the ship, should lose all, and that the ship and the lading should become the property of those who should stay in it. It happened that in a dangerous storm all persons forsook a ship except one sick man, who, in consequence of his illness, was unable to get out' to make his escape. The ship, by chance, came safe to port, and the sick man claimed it as his by the express terms of the law. But it was adjudged that as the reason of the law was an encouragement to those who should expose their lives to save the ship, and that as this sick man neither stayed in the ship on that account, nor contributed anything to the saving of it, his claim could not be maintained, although within the letter of the law. Puffendorf, b. 5, ch. 12.
Now in regard to the provision of the statute in question, in this *87, 88 case, being a restriction on the limitation of actions in favor of the disability of infancy, and the reason and intention being to fix the 87] period for the limitation to begin to run, at *the time when the legal disability of minority should cease, it is very plain that by the settled rules of interpretation, after the enactment of the law of February 17, 1834, the period when the statute of limitations began to run as to females, was the age of eighteen years, when the disability of infancy ceased.
It is claimed in the defense that this view of the case makes an unfavorable discrimination in regard to females, and allows the bar of the statute to be interposed as to them three years sooner than it is allowed as to the males. This is a glaring error. The period of the limitation as to the action in question is four years. This commences to run at the time of the removal of the disability of infancy, as to females as well as to males. The length of time for the statute to run is precisely the same in each case. The distinction is founded entirely on the difference in the time when the disability ceases. The female is favored by the rights of majority three years earlier than the male. This distinction is presumed by the law to be founded in nature, and the difference in the condition of the two sexes. If the bar of the limitation of actions did not arise as to the female, in such case as this, until four years after her reaching the age of twenty-one years, then seven years instead of-four would, in fact, be allowed her, after the right of action had accrued to her, in full legal capacity, to claim and recover her rights. The act of 1834 does not merely confer upon the female the power of contracting at the age of eighteen years, but it also expressly provides, “ That she shall be at that age, to all intents and purposes, held and considered to be of full age, any law or custom to the contrary notwithstanding.” For all purposes, and in all respects, the female of the age of eighteen years, has been treated in all judicial proceedings, and by the laws of the state, as of full age, since the enactment of this statute.
The replication, therefore, to the plea of the statute of limitations, in the opinion of the majority of the court, was insufficient 88] *in law, and the demurrer to the same was properly sustained.
The judgment of the common pleas,is therefore affirmed.